(C. D. 303)

BUTLER BROTHERS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 20, 1940)

*G. W. R. Wallace* and *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.

*Webster J. Oliver,* Assistant Attorney General (*Samuel D. Spector, Richard H. Welsh, Joseph F. Donohue, Daniel I. Auster,* and *Daniel G. McGrath,* special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J, concurring.

KEEFE, Judge: This case involves the classification of certain earthenware teapots imported at Portland, Oreg., from Japan. The plaintiffs claim that the teapots are known in the trade and commerce of the United States as Rockingham earthenware and, as such, properly dutiable under the *eo nomine* provision therefor at 25 per centum ad valorem in paragraph 210, Tariff Act of 1930. The collector assessed the merchandise for duty as decorated earthenware at 50 per centum ad valorem and 10 cents per dozen pieces under paragraph 211.

In an effort to prove the commercial designation of the term "Rockingham earthenware" in the trade and commerce throughout the United States, hearings were had in New York, Chicago, Baltimore, San Francisco, and Los Angeles. Six exhibits were introduced in evidence illustrating teapots glazed in colors ranging from jet black and very dark brown to light brown and green. Exhibit 1 and Illustrative Exhibit A represent the teapots imported herein, Exhibit 1 having been broken during analysis. In the analysis it was determined that the glaze upon Exhibit 1 contained coloring ingredients

composed of lead, cobalt, and manganese oxides, lead 49 per centum, cobalt 13.6 per centum, and manganese 2.1 per centum.

The question of the classification of earthenware teapots as Rockingham ware has been before the courts upon many occasions. It has been consistently held that the common meaning of the term "Rockingham earthenware" applies to a certain class of cheap earthenware generally composed of a reddish clay body, but sometimes of a yellow, and less frequently of a white clay body. The body is covered with a brown glaze, the chief coloring ingredient of which is manganese. That, because of the composition of the glaze, Rockingham earthenware must of necessity be of practically the same color, an opaque rich brown, although there might be some variation in the shade, depending upon the proportions of the ingredients and the conditions under which the Rockingham ware is fired. *Ways* v. *United States*, T. D. 32271, G. A. 7327; *Masson* v. *United States*, 3 Ct. Cust. Appls. 420, T. D. 33000; *Huber Co.* v. *United States*, T. D. 44059; *United States* v. *Felsenthal*, 16 Ct. Cust. Appls. 15, T. D. 42713.

The teapots before us do not have a rich brown glaze, the chief coloring ingredient of which is manganese, and the plaintiffs do not contend that they come within the adjudicated common meaning of the term "Rockingham earthenware," it being specifically contended herein that the teapots are within the commercial meaning of the term as understood in the wholesale trade and commerce of the United States prior to June 17, 1930, the effective date of the Tariff Act of 1930.

At the various hearings 10 witnesses testified for the plaintiffs that they had bought and sold Rockingham earthenware teapots in all parts of the United States and that the term "Rockingham earthenware" as known in the wholesale trade and commerce of the United States was not restricted to the common meaning thereof as adjudicated by the courts but comprehended teapots with a brown or red clay body having a highly lustrous glaze varying in color from brown to black, either plain or decorated, and included so-called jet or samian ware; that customers ordering Rockingham earthenware teapots indicated the particular color desired; that such ware was never referred to in the trade as having a manganese or cobalt glaze; that the terms "jet ware" and "samian ware" are just other names for Rockingham ware.

The defendant called four witnesses, including the examiner of earthenware at New York, who testified that his basis of classification of teapots as earthenware or as Rockingham ware is whether the chief coloring ingredient in the glaze is manganese or not. If manganese is the chief coloring ingredient the merchandise is classified as Rockingham earthenware; if it is not the chief coloring ingredient, the merchandise would be classified as earthenware. Two of the de-

fendant's witnesses also corroborated the testimony of the plaintiff's witnesses that the trade as a rule was not familiar with the expressions "jet ware" or "samian ware" and that all of the teapots in evidence would be classed in the wholesale trade as Rockingham earthenware.

From a careful consideration of the evidence we are of the opinion it has been established that on and prior to June 17, 1930, in the wholesale trade and commerce of the United States, the term "Rockingham earthenware" had a meaning different from the common meaning as previously judicially defined and determined, and that in the wholesale trade and commerce throughout the United States the definite, uniform, and general meaning of the term "Rockingham earthenware" comprehended an earthenware or yellow or red clay body having a lustrous glaze, usually ranging from brown to black, and was not confined to a glaze having manganese as the chief coloring ingredient.

For the reasons stated we hold that the earthenware teapots in question are properly dutiable as Rockingham earthenware under paragraph 210, act of 1930, at 25 per centum ad valorem. Judgment will therefore be entered in favor of the plaintiffs directing the collector to reliquidate the entry and to make refund accordingly.

### CONCURRING OPINION

EVANS, Judge: I am not convinced that the evidence in this case establishes commercial designation for Rockingham ware as being different from the adjudged definition quoted in the majority opinion. While most of the plaintiffs' witnesses in answer to the question whether the definition given by the court in former decisions was the same or different from the trade understanding answered that it was different, yet the testimony of these witnesses, in my opinion, fails to establish a uniform, definite, and general understanding as to what Rockingham ware is and that such trade understanding differs from the common meaning. Their testimony on the question of what Rockingham ware consists of was as follows:

Mr. ROSENFELD. Pottery consisting of a crude, unwashed clay covered with a colored glaze.

Mr. VAN NOSTRAND. It was anything that was made of red clay was known in the trade as long as I have been associated with the trade, as Rockingham, irrespective of the particular glaze that is put on the ware.

Mr. RATNER. It was generally supposed it was a reddish or brownish earthenware body with glaze that ran, say, from a brownish to a blackish.

Later, this witness stated that it was not limited to brown or black glazes, but includes glazes that are accepted in the trade as being Rockingham glazes; that they are green, brownish, and blackish, and also include banded.

Other witnesses for the plaintiffs gave testimony on this point as follows:

Mr. RAYMOND. An earthenware body with a highly lustered glaze ranging or varying from brown to black.

On redirect examination this witness said it must be composed of red or brown earthenware.

Mr. FRIEDBERG. Supposed to indicate teapots principally in dark high luster colors.

Mr. FALK. Merchandise with a terra cotta body and a highly lustrous glaze, principally various shades of brown to jet black.

However, it clearly appears from the following notice filed by the attorney for the defendant that the Government is abandoning its long-established practice in the classification of Rockingham ware. The notice is in the following language:

This office has reviewed the record in the above case and does not wish to file a brief.

I therefore join in sustaining the protest.