The protest is sustained to the extent indicated. In all other respects, it is overruled.

Judgment will be rendered accordingly.

(C.D. 2894)

NATIONAL SILVER CO. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided February 16, 1967)

*Stein and Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Richard J. Kaplan*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: This case concerns the classification of items in Rockingham barbecue sets, consisting of casseroles, plates, mugs, coffee servers, warmers, creamers, and sugars, assessed with duty at 40 per centum, 25 per centum, or 20 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930, as modified.

Plaintiff protests said classification and claims such items are, in fact, Rockingham earthenware properly dutiable under paragraph 210 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade (T.D. 53865), supplemented by Presidential proclamation (T.D. 53877), at the rate of 6¼ per centum or 12½ per centum ad valorem, depending upon the unit value per dozen pieces of the articles.

The various items at issue were classified by the collector as decorated earthenware composed of a nonvitrified absorbent body, including cups, mugs, etc., and all other articles in chief value of such ware, and were assessed with duty at 10 cents per dozen pieces and at the various rates provided for this merchandise in paragraph 211, as modified by T.D. 51802, T.D. 52739, and T.D. 53865, supplemented by T.D. 53877, as clarified in the stipulation of counsel for the parties, dated October 6, 1964, as follows, viz:

| | | |
|---|---|---|
| Rock Casserole with Cover | D | 25% ad valorem |
| Rock Plates | A | 20% ad valorem |
| Rock Mugs | B | 25% ad valorem |
| Rock Coffee Server with Top | D | 25% ad valorem |
| Rock Warmer | C | 40% ad valorem |
| Rock Creamer | B | 25% ad valorem |
| Rock Sugar with Cover | C | 40% ad valorem |

Paragraph 210 of the Tariff Act of 1930, as modified by T.D. 53865, *supra*, under which plaintiff claims classification, reads in pertinent part as follows:

Rockingham earthenware, valued per dozen articles—
    Under $1.50_____ 12½% ad val.
    $1.50 or more_____ 6¼% ad val.

The sole issue in this case is whether the articles at bar are articles of Rockingham earthenware, within the meaning of paragraph 210, *supra*, as claimed by plaintiff, rather than decorated earthenware articles under paragraph 211, as classified by the collector of customs.

The evidence consists of the testimony of one witness for the plaintiff and six exhibits offered by plaintiff and received in evidence. The defendant offered no testimony or exhibits.

Plaintiff's witness, Mr. Harold I. Gross, vice president in charge of merchandising of plaintiff company, testified plaintiff's business included the importing of household appliances of ceramics, wood, china, earthenware, Rockingham, and stainless steel, and the manufacturing of similar hollowware in the United States. Mr. Gross stated he had been in charge of various phases of the ceramic lines produced by plaintiff and was also associated with Santa Anita Potteries, an affiliate of plaintiff, which manufactured ceramic products such as dinnerware, art objects, and accessory items of earthenware with a production capacity of approximately 2,000 dozen pieces daily; that, in addition to being president of Santa Anita Potteries from 1952 to 1957, he worked closely with the engineers and personnel in the forming of the ware, planning of the bodies and glazes, and development and design of the bodies.

Mr. Gross testified that, in the course of his duties and dealings for a number of years with people in the ceramics industry throughout the United States, he had become familiar with articles bought and sold in the trade and commerce of the United States as Rockingham earthenware; that he became acquainted with this merchandise as was produced by various factories in the United States and also such as was brought into the country from abroad, which was directly competitive with the products Santa Anita Potteries was making.

Mr. Gross further testified he had the same understanding of the meaning in the trade and commerce of the United States of the term "Rockingham earthenware," as that recognized by this court in the recent decision in *Justin Tharaud & Son, Inc.,* and *J. J. Murphey & Co.* v. *United States*, 44 Cust. Ct. 216, C.D. 2177, wherein it was stated (p. 223) :

* * * it has been established that, on and prior to June 17, 1930, there was a commercial meaning for the term "Rockingham earthenware" different from the common meaning; that said meaning was general, uniform, and definite in the trade and commerce of the United States; that, at that time, within the trade and commerce of the United States, the term "Rockingham earthenware" was used to designate articles composed of a red clay body, having a variety of glazes, colors, and decorations * * *.

The witness stated he was familiar with the item invoiced as "RF 8440 Rockingham Barbecue set" at issue herein, a representative sam-

ple of the plate from such set having been introduced in evidence as plaintiff's exhibit 1. A broken piece from one of the plates, showing the red Rockingham clay of which it was composed, was received as plaintiff's exhibit 2. A photograph of the plates and mugs in the barbecue set was received in evidence as plaintiff's exhibit 3.

Witness Gross further testified as to his familiarity with the method of manufacture of the barbecue sets in Japan at issue herein and described the method of manufacture as follows:

Well, you start, using the red Rockingham clay body. It is then, after the red Rockingham body is put in a drying kiln and dried so practically all the moisture is out of it, you then decorate the plate by dipping it in a white slip or engobe, and then hand painting the brown streaks, and the wagons and other figure decorations that are on the plate. It is then dried, air dried, and after just drying enough to set the decoration, it is then dipped into a glaze and fired through the kiln.

He further stated the factories use a light brown Rockingham glaze which is made brown by the use of manganese; that the glaze used in making the barbecue sets at bar includes a percentage of manganese, which plaintiff specifically requested because plaintiff was told by customs that, in order to have the merchandise classified as Rockingham ware, the glaze had to have a percentage of manganese; that they were running approximately 1 percent manganese in the glaze; that the white material into which he had seen the articles dipped is a white clay body or "slip" in liquid form; that a "slip" is the ceramic term used to describe a liquid form of clay body.

Mr. Gross further testified that he instructed the factory how to get the decorative effect of the white background with the brown streaks; that, to get that decorative effect, he advised the factory to dip the plate in the white engobe or slip and then to hand paint the brown streaks, the border, and the figures. He further testified that, before this process was used, they originally had tried to get the same effect by hand painting the same type of white slip material in and then letting the brown or reddish body show through, but that it was not as effective a decoration; that, while it could be done, it was hard to make it uniform that way, and it did not have the same pleasing decorative effect which they were able to achieve by the dipping method.

Mr. Gross further testified that as a person experienced in the production of ceramic ware and of these particular articles, he regarded the white slip as a part of the decoration and not as part of the body; that but for the decoration, there would be no need to dip it into the white; that it was part of the decoration and was essential in creating the decorative effect.

Mr. Gross testified that other Rockingham ware articles having the brown Rockingham glaze were imported by National Silver Co. A small bean pot, illustrative of an article imported by plaintiff company as Rockingham earthenware, and classified as Rockingham earthenware by the customs officials, was received in evidence as plaintiff's illustrative exhibit 4. Mr. Gross testified that the dark brown inside surface of the mug at issue herein, illustrated in plaintiff's exhibit 3, has a finish and color which are very similar to the finish and color on plaintiff's illustrative exhibit 4, the bean pot received in evidence herein, and that the inside portions of both are the same brown Rockingham glaze.

A teapot, light blue in color, with a gold spout and handle, was received as plaintiff's collective exhibit 5. Mr. Gross testified that the clay of which it was made was the same red Rockingham clay as that in the barbecue sets before the court; that this was another sample of other Rockingham articles imported by National Silver Co. which have a glaze other than a brown glaze, and that this Rockingham merchandise was imported by plaintiff company at the Rockingham rate of duty.

A sample of another teapot imported by plaintiff company, which the witness testified was classified as Rockingham earthenware with a duty of either $6\frac{1}{4}$ percent or $12\frac{1}{2}$ percent, depending on its value, was received in evidence as plaintiff's illustrative collective exhibit 6. Mr. Gross testified that, in the process of manufacturing Rockingham teapots like plaintiff's collective exhibit 6, in addition to the red Rockingham clay used in making the teapot which is plaintiff's collective exhibit 6, a yellow engobe was used, as well as a glaze, and gold decoration to produce the effect exhibited by this teapot. He explained that the purpose of the yellow engobe on plaintiff's collective exhibit 6 was for decoration only, just as the purpose of the white engobe on plaintiff's exhibit 1 (the barbecue plate at issue herein) was likewise just to achieve a decorative effect.

It is clearly apparent to us that the merchandise here at issue is within the commercial meaning of the term "Rockingham earthenware" and should be classified under paragraph 210 of the Tariff Act of 1930, as modified, *supra.*

We have heretofore recognized that the term "Rockingham earthenware" used in paragraph 210 of the Tariff Act of 1930 had on and prior to June 17, 1930, in the wholesale trade and commerce of the United States, a meaning different from the common meaning, as previously judicially defined and determined. *Butler Brothers* v. *United States,* 4 Cust. Ct. 120, C.D. 303; *M. & D. Miller, Inc.* v. *United States,* 28 Cust. Ct. 195, C.D. 1410, affirmed 41 CCPA 226, C.A.D. 556; and *Justin Tharaud & Son, Inc., supra.*

In *Butler Brothers, supra,* the commercial meaning was held to include an earthenware or yellow or red clay body having a lustrous glaze usually ranging from brown to black and was not confined to a glaze having manganese as the chief coloring ingredient. In *Miller,* the commercial meaning of the term "Rockingham earthenware" was held to encompass red clay teapots having a lustrous glaze, colored so as to have a stippled or mottled appearance, and decorated with slips of different clays. Our court of appeals affirmed the decision of this court (*United States v. M. & D. Miller, Inc.,* 41 CCPA 226, C.A.D. 556), stating the merchandise there at issue was properly classifiable as Rockingham earthenware under paragraph 210 of the Tariff Act of 1930, rather than as decorated earthenware under paragraph 211, notwithstanding that bands or body slips of light colored clay had been applied over the bodies of the articles and that a transparent glaze rather than a manganese glaze had been used. In *Justin Tharaud & Son, Inc.,* we held the commercial designation to include articles composed of a red clay body, having a variety of glazes, colors, and decorations.

It follows that the merchandise at bar, all of which has a red Rockingham body, decorated with various slips and glazes, is within the commercial meaning of Rockingham earthenware as aforesaid and, therefore, properly classifiable as Rockingham earthenware under paragraph 210 of the Tariff Act of 1930, as modified, *supra.*

The protest of the plaintiff, as amended, that the merchandise is properly dutiable as Rockingham earthenware at the rate provided in paragraph 210 of the Tariff Act of 1930, as modified, is sustained, the collector's classification overruled, and judgment will be entered for the plaintiff accordingly.