**ENESCO IMPORTS, INC.**

v.

**UNITED STATES.**

**C.D. 3423; Protest 64/1302-14109.**

United States Customs Court,
Third Division.
April 23, 1968.

Schwartz & Lidstrom, Chicago, Ill. (Barnes, Richardson & Colburn, New York City, Earl R. Lidstrom, Chicago, Ill., and Joseph Schwartz of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris and Thomas Fernandes, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

Plaintiff importer has filed protest against the classification of certain teapots, identified on the invoice by numbers E-0197 and E-0198, which were assessed with duty at the rate of 45 per centum ad valorem, plus 10 cents per dozen pieces, under paragraph 212 of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877.

Plaintiff claims the articles should have been assessed at the rate of 6¼ per centum ad valorem under paragraph 210 of the Tariff Act of 1930, as modified by T.D. 53865, supplemented by T.D. 53877.

The competing provisions of the Tariff Act of 1930 are as follows, viz:

*Assessed:*

Paragraph 212, as modified by T.D. 53865, supplemented by T.D. 53877:

| Tariff Act of 1930 paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 212 | China, porcelain, and other vitrified wares * * * composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture * *; all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for: | |
| | Tableware, kitchenware, and table and kitchen utensils, not containing 25 per centum or more of calcined bone: | |
| | * * * * * | |
| | Other than hotel or restaurant ware or utensils: | |
| | * * * * * | |
| | * * * articles other than plates, cups, and saucers * * * | 10¢ per doz. separate pieces and 45% ad val. |

*Claimed:*

Paragraph 210, as modified by T.D. 53865, supplemented by T.D. 53877:

| Tariff Act of 1930 paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 210 | Rockingham earthenware, valued per dozen articles— | |
| | * * * * * | |
| | $1.50 or more ............... | 6¼% ad val. |

Plaintiff introduced testimony of John J. Baruch, its vice president, who stated he was familiar with the products his company dealt with and identified plaintiff's exhibits 1 and 2 as representative in appearance to items E–0197 and E–0198 here involved. He testified the imported teapots were made from red clay, shaped in a mold, baked, sprayed with a glaze and decorated by hand, and baked again. He stated that, by looking at the underside portion of the teapot which is unglazed, it appeared the body of the teapot was made of red clay. The witness identified plaintiff's collective exhibit 3 as representative of the imported merchandise and showing a fracture thereon which was an unglazed surface. The fracture was not vitreous or semivitreous within the definition of the witness because it did not have a glassy appearance. The fracture was coarse and had a clay appearance. The witness stated the term "vitreous" indicated to him a glassy substance, and the term "semivitreous" a substance which was still glassy but more porous.

The witness testified as to the commercial tests used in the trade to test the absorbency of articles such as here involved. One was to weigh a piece of material, immerse it in water for a period of time, reweigh the item and calculate the absorbency as a percentage of the whole. Another commercial test was to apply a little ink to a fracture and to observe the time it took for the ink to dry. By attempting to remove the ink after a short time, it could be determined whether the material was highly absorbent or not at all absorbent—glassy vitrified. When this test was applied to the instant merchandise, the ink could not be removed after only a few seconds, as it was completely dry, but when the same test was applied to a vitrified fracture, the ink was absorbed slower and on extremely fine bone china, it was possible to wipe the ink off hours later. The test could be applied to plaintiff's exhibit 3.

The defendant had two witnesses, William Bailey, customs chemist of Chicago, and Harry W. Thiemecke, a ceramics engineer.

Mr. Bailey testified he conducted a test on samples of the 6½-and 7¾-inch teapots taken from the shipment. Each pot and lid was broken and three pieces were selected at random from each article. Separate tests were run on each specimen, then an average was taken of the three pieces from each article, and the average reported as the water absorbency of each article.

He stated the tests were run by immersing each piece in water at room temperature for 48 hours; the piece was then weighed, dried in an oven at 108° centigrade for 24 hours, cooled, and then weighed again. The difference in the two weights was the amount of water absorbed. The test is a modification of the American Society for Testing Materials test for water absorption, the customs test having doubled the time the subject is kept in water when undergoing the ASTM test. A spectrographic analysis of the samples revealed that they were clay.

On cross-examination, it was developed that the glaze was not removed from any of the broken pieces before they were tested and water would enter only through the exposed fracture. However, the witness did not believe this inhibited absorption over an extended period of time and that tests made without the glaze made no appreciable difference.

It was further stated that the fracture shown by exhibit 3 was a typical fracture, that it was not vitreous, and that the witness could not tell whether it was semivitreous or unvitrified. It was testified that customs classifies articles with a water absorption of over 3 percent as earthenware; under that, as semivitreous ware. On redirect examination, it was brought out that visual examination could only reveal whether a fracture was vitreous or glass-like, not whether it was water absorbent; on re-cross-examination, it was stated the samples did not have a glassy fracture.

Mr. Thiemecke, a ceramics engineer with Homer Laughlin China Co., testified the Laughlin Co. manufactures two lines of dinnerware, one designated as vitreous ware which is supplied to hotels and restaurants and the other designated as semivitreous which is sold for use in homes. He stated semivitreous ware was understood in the industry to have an absorption between one-half of 1 percent and 10 percent, and that water absorption in the industry was determined by the ASTM test. In the witness' opinion, semivitrification could not be determined by visual or miscroscopic examination, and the ink test could not be used to determine quantitatively whether an article is semivitrified or vitrified. At the Government's request, the witness had analyzed three glazed and unglazed pieces of dinnerware according to the ASTM and Customs Laboratory methods. Under the Customs Laboratory method, the glazed and unglazed pieces showed, respectively, 4.9 percent and 7.2 percent average absorption and under the ASTM method showed, respectively, 6.1 percent and 8.5 percent average absorption.

Plaintiff contends the evidence in this case, including that offered by the Government, is to the effect that the imported teapots in question are not vitrified ware, are not nonabsorbent, and do not show the required fracture but, according to Government witnesses, are something called semivitrified or semivitreous ware, and that semivitrified or semivitreous ware is not included within paragraph 212.

We believe plaintiff's position is well taken. The language of paragraph 212 makes no reference to semivitrified or semivitreous ware, but only to "* * * vitrified wares * * * composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture * * *." It follows, semivitrified or semivitreous ware is not properly classifiable under paragraph 212. We are also unable to see how the instant merchandise fits any of the requirements set forth in the decision of this court,

third division, in General Ceramics Corporation v. United States et al., 46 Cust. Ct. 37, C.D. 2230, affirmed General Ceramics Corporation v. United States et al., 49 CCPA 21, C.A.D. 788, quoted with approval by our court of appeals, viz:

It is evident from the language of paragraph 212, supra, that in order to meet the requirements thereof the articles or wares in question must have a body which is (1) vitrified, (2) nonabsorbent, and (3) which when broken shows a vitrified or vitreous, or semivitrified or semivitreous farcture.

The decision was further quoted:

The *Vantine* case was called to the attention of Congress when the Tariff Act of 1922 was enacted (Summary of Tariff Information, 1920, p. 148) and the *Vandegrift* case when the Tariff Act of 1930 was being enacted (Summary of Tariff Information, 1929, p. 487). While the words "other vitrified wares, including chemical porcelain ware and chemical stoneware" were added to the china and porcelain ware provision by the acts of 1922 and 1930, no changes were made in the language describing the composition of such ware. Since Congress had actual notice of the decisions, its reenactment of the language interpreted by our court of appeals is tantamount to adoption of that interpretation. United States v. The Water Treatment Co. of America, etc., 33 C.C.P.A. (Customs) 174, C.A.D. 332; International Expediters, Inc. v. United States, 41 C.C.P.A. (Customs) 156, C.A.D. 543. The additional provision for other vitrified wares, including chemical porcelain and stoneware, does not, of course, change in any way the requirement that such wares have vitrified nonabsorbent bodies which when broken show the specified fracture.

In the Summary of Tariff Information, 1921, page 298, it was suggested that the words "vitrified nonabsorbent" be omitted before the word "body" in order to avoid conflict with

the words "semivitrified or semivitreous" before "fracture." Since this was not done, it is evident that Congress intended that the wares and articles covered by paragraph 212 have vitrified bodies as well as the specified fracture.

In a more recent case, Maher-App & Company v. United States, 44 C.C. P.A. (Customs) 22, C.A.D. 630, it was held that the expression "composed of a vitrified non-absorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture" was exclusionary and that articles which did not show such fracture could not be classified under paragraph 212 by similitude.

*In view of these cases, we conclude that to be classifiable under paragraph 212, an article must have a body which has been converted wholly, partially, or externally into glass or a glassy substance, to an appreciable degree, and that it must show a vitrified or vitreous, or semivitrified or semivitreous fracture.* [44 CCPA, pages 22–23. Emphasis supplied.]

The Government argues that their two witnesses testified the only reliable way to determine whether an object is vitrified, or semivitrified, or nonvitrified is by testing it under scientific methods (presumably referring to the ASTM or Customs Laboratory tests) and that the results of the two tests have conclusively established that the merchandise at bar is semivitrified. This argument is completely irrelevant for, as we have previously stated, paragraph 212 under which this merchandise was classified makes no provision for semivitrified ware.

It is true the Government laboratory report (defendant's exhibit A), admitted into evidence over plaintiff's objection that the statements therein contained were conclusions, does recite that the examination revealed the samples are composed of vitrified, nonabsorbent, colored, opaque bodies. Aside from the obvious conflict between this report and the testimony from both Government witnesses indicating the articles were neither vitrified nor nonabsorbent, it is clearly apparent the defendant's evidence does not, in any event, relate to the required fracture specified by paragraph 212 and as discussed in *General Ceramics*. In fact, there is nothing in the laboratory report to contradict the fact the fracture did not have a glassy appearance or resemble glass in its important characteristics. The customs chemist correctly characterized the fracture shown by plaintiff's exhibit 3 as typical and examination of such exhibit reveals the fracture was not glassy.

As to whether teapots here at issue are Rockingham earthenware within paragraph 210 as claimed, the record establishes that the articles in question have a red clay body and are glazed and we held this in Justin Tharaud & Son, Inc., and J. J. Murphy & Co. v. United States, 44 Cust.Ct. 216, C.D. 2177, and National Silver Co. v. United States, 58 Cust.Ct. 88, C.D. 2894, to be Rockingham earthenware; see also United States v. M. & D. Miller Inc., 41 C.C.P.A. 226, C.A.D. 556. We find no merit in the Government's contention there has been no showing the instant merchandise was earthenware.

Judgment will be entered for plaintiff.

RICHARDSON, J., concurs.